UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MKRTICH M.,

      Petitioner,

  v.

WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,

      Respondents.

Case No.  1:26-cv-0194-TLN-JDP

FINDINGS AND RECOMMENDATIONS

Mkrtich M. was granted asylum in 2001 and, after serving his prison sentence for an aggravated felony, was arrested and re-detained by ICE.[1]  Petitioner seeks immediate release, arguing that his re-detention without a bond hearing violates the Fifth Amendment.  He seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the reasons outlined below, I recommend that the petition be denied.

**Background**

Petitioner was granted asylum on November 7, 2001, after coming to the United States from Armenia.  ECF No. 9-1 at 4.  On June 29, 2009, petitioner was convicted of attempted murder under California Penal Code § 664-187(a) and sentenced to twenty-one years.  *Id*. at 4, 16.  On May 30, 2025, petitioner was released from state prison and "immediately transferred . . .

---

[1] The court previously omitted petitioner's full name and directed the Clerk of Court to update the docket to list petitioner's first name and last initial only.  ECF No. 5 at 1 n.2.

1

into immigration detention at the Golden State Annex." ECF No. 14 at 2. On June 4, 2025, petitioner was served with a Notice of Intent to Terminate Asylum Status, though he refused to sign it.[2] ECF No. 9-1 at 4, 11-12. On September 15, 2025, the government filed removal documents. *Id*. at 7-9. The removal proceedings are still pending, and petitioner remains detained.

## Procedural History

On January 12, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus, ECF No. 1, and a motion to appoint counsel, ECF No. 3. The court granted petitioner's request and appointed counsel on January 20, 2026. ECF No. 7. That same day, respondents filed an opposition to the petition. ECF No. 9. On February 4, 2026, petitioner, through counsel, filed a traverse. ECF No. 14.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[2] While petitioner claims that he did not receive the notice, there is sufficient evidence in the record that he did. His attorney acknowledges in the traverse that he declined to sign the notice when it was presented to him on June 4, 2025. ECF No. 14 at 2. On September 15, 2025, a copy of the notice was mailed to petitioner where he was detained. ECF No. 9-1 at 5. Lastly, petitioner refused to accept a copy of the notice that was handed to him in immigration court on December 29, 2025. ECF No. 1 at 9.

**Analysis**

Petitioner argues that respondents violated his Fifth Amendment Due Process rights by re-detaining him without a bond hearing.[3]  ECF No. 14 at 3.  Respondents counter that the petition should be dismissed because petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), which allows the Attorney General to detain and then remove any noncitizen who has committed certain qualifying crimes.  ECF No. 9 at 2-3.  There is no dispute that petitioner was convicted of a qualifying crime (attempted murder) such that his current detention is mandated under § 1226(c).  *See id.* at 1; ECF No. 14 at 1.

However, while § 1226(c) mandates petitioner's detention, respondents fail to address petitioner's argument that indefinite detention without a bond hearing violates the Fifth Amendment.  *See* ECF No. 1 at 6-17; ECF No. 9 at 2-3.  At present, there is no binding authority that squarely addresses this issue.  In *Zadvydas*, the Supreme Court addressed a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6) and held:

> We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months.  Consequently, for the sake of uniform administration in the federal courts, we recognize that period.  After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.

533 U.S. at 701 (internal quotation marks and citation omitted).

However, in *Demore v. Kim*, 538 U.S. 510, 529 (2003), the Supreme Court rejected a due process challenge to § 1226(c) and distinguished *Zadvydas* because, unlike indefinite detention pending removal under § 1231(a)(6), mandatory detention under § 1226(c) has a "definite termination point," i.e., the conclusion of removal proceedings.  The Court held that "[d]etention

---

[3] Respondents do not contest that petitioner has a protected liberty interest under the Due Process Clause.  In light of this apparent concession and the fact that many courts in this Circuit have found that noncitizens acquire a liberty interest in their continued release, I find it unnecessary to address this issue.  *See, e.g.*, *Labrador-Prato v. Noem*, 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *4 (E.D. Cal. Dec. 2, 2025); *Lopez v. Lyons*, No. 2:25-cv-3174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

3

during removal proceedings is a constitutionally permissible part of that process." *Id*. at 531.

In *Jennings v. Rodriguez*, the Supreme Court rejected the Court of Appeals' construction of § 1226(c) "as imposing an implicit 6-month time limit on an alien's detention" and remanded the case. 583 U.S. 281, 292 (2018). As the Court of Appeals noted on remand, however, the Supreme court "declined to reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). "Since the *Rodriguez* remand, there has been a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional." *Lopez v. Garland*, 631 F. Supp. 3d 870, 876 (E.D. Cal. 2022) (internal quotation marks and citation omitted).

Because neither the Court of Appeals nor the Supreme Court have provided guidance explaining when a noncitizen's mandatory detention under § 1226(c) becomes unconstitutional, courts in this Circuit have used varied tests to determine whether due process requires a bond hearing. The three main tests used in this Circuit are: (1) the general due process assessment under *Mathews v. Eldridge*, 424 U.S. 319 (1976); (2) the test announced in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019); and (3) the test announced in *Lopez*, 631 F. Supp. 3d 870.

Petitioner urges the court to use the *Lopez* test, and respondents do not address due process at all, much less advocate for employing a particular test. ECF No. 9 at 2-3; ECF No. 14 at 6-7. In *Lopez*, to determine whether prolonged mandatory detention under § 1226(c) violates the Due Process Clause, the court considered three factors: "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government."[4] *See Lopez*, 631 F. Supp. 3d at 879.

---

[4] The *Lopez* test utilizes three factors from the *Banda* test. *Lopez*, 631 F. Supp. 3d at 877-879. In *Banda*, to determine whether prolonged mandatory detention under § 1225(b) violates the Due Process Clause, the court also considered "the conditions of detention" and "the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

In the absence of binding authority instructing the court which test to employ, I analyze petitioner's claim under the *Lopez* test because that case dealt with the same statutory authority under which petitioner is detained.  Moreover, "[w]hile the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1118.  Similarly, the two factors employed in *Banda* but not *Lopez*—the conditions of detention and the likelihood that the removal proceedings will result in a final order of removal—"are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing." *Lopez*, 631 F. Supp. 3d at 879.  Accordingly, petitioner's claim is analyzed under the three factors articulated in *Lopez*: (1) the total length of detention to date; (2) the likely duration of future detention; and (3) the delays in proceedings caused by petitioner and the government.  I consider each factor in turn.

## I.    Total Length of Detention

Starting with the first factor, petitioner has been detained for approximately eight months.  Courts have found that this factor weighs in the petitioner's favor where detention has lasted at least one year.  *See, e.g.*, *Baishymyrov v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-01658-DMC, 2026 WL 145644, at *7 (E.D. Cal. Jan. 20, 2026) (finding that the first factor weighed in the petitioner's favor because detention had lasted at least one year); *Sufiiarov v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3265-LL-DDL, 2026 WL 26079, at *4 (S.D. Cal. Jan. 5, 2026) (same); *Durand v. Allen*, No. 3:23-cv-00279-RBM-BGS, 2024 WL 711607, at *5 (S.D. Cal. Feb. 21, 2024) (same).  "In general, as detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (internal quotation marks, citation, and alteration omitted).

Here, petitioner has been detained for less than a year, which cuts against a finding that this factor weighs in his favor.  In the traverse, petitioner argues that "[o]ther courts have granted habeas relief under similar circumstances" and cites two cases, neither of which support his

position.  ECF No. 14 at 7.  The first case is inapposite because, as with the above-referenced cases, the petitioner had been detained for at least a year.  *See Diep v. Wofford*, 24-cv-01238-SKO, 2025 WL 604744, at *2 (E.D. Cal. Feb. 25, 2025) ("The parties acknowledge that Petitioner has been detained for approximately 13 months pursuant to 8 U.S.C. § 1226(c) . . . .").  In the second case, while the petitioner had been detained for only two months, the court did not consider the length of detention in reaching its decision; rather, it employed the *Mathews* test and relied on facts that are distinguishable from the instant action.  *See Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021) (holding that, where the petitioner had been released from prison six years prior to re-detention and had "submitted evidence showing his rehabilitation since incarceration," an immigration judge could find that the petitioner was not a flight risk or danger to the community).  As such, petitioner does not present any authority showing that his length of detention supports a finding that his due process rights have been violated.

Accordingly, this factor weighs in favor of respondents, although only slightly given that petitioner has been detained for the majority of a year.

**II.    Likely Duration of Future Detention**

Turning to the second factor, petitioner represents that the immigration judge presiding over his case indicated her intent to "order for his deportation on the following court hearing scheduled on February 15, 2026."  ECF No. 1 at 9.  This date has come to pass, and neither party has provided the court with any information about the status of removal proceedings.  Despite his previous representation to the contrary, petitioner now argues that the removal proceedings "are likely to drag on for many months as [he] attempts to gather evidence and prepare his case while in detention."  ECF No. 14 at 7.  However, petitioner does not explain what evidence he must gather or why he needs months to prepare his case.

Petitioner also argues that "the Armenian government has provided documents proving [he] is not a citizen or national of that country," and that, in the event petitioner is ordered removed, "he is stateless and has nowhere to go other than to remain indefinitely in the limbo of immigration detention unless granted relief by the immigration court."  ECF No. 14 at 7.  As an

6

initial matter, this argument is likely misplaced because the focus of the second factor appears to be on the length of detention based only on removal proceedings, not other future scenarios. *See Banda*, 385 F. Supp. 3d at 1119 ("[T]he Court considers how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'").

Moreover, the referenced documents do not establish that petitioner is not a citizen of Armenia.  In 2017, petitioner requested to transfer his prison sentence to Armenia, and Armenia sent a letter denying such request because there was an "absence of any relevant documents proving" petitioner was an Armenian citizen.  ECF No. 1 at 38.  This letter does not conclusively establish that petitioner is not an Armenian citizen.  Without further clarification, the court is left to speculate whether the Armenian government fully investigated his citizenship claim; indeed, another plausible inference from the letter is that petitioner did not submit proof of citizenship with his application.  Although they do not provide evidence, respondents represent that petitioner is a citizen of Armenia.  ECF No. 9 at 1.  Under these circumstances, it would be improper for the court to find that petitioner will be subject to indefinite detention if he is ordered removed.[5]

Though petitioner does not raise the issue, some courts have found that the possibility of an appeal warrants weighing this factor in the petitioner's favor. *See, e.g.*, *Arido-Sorro v. Garland*, No. cv-23-00842-PHX-JAT (ESW), 2024 WL 4393264, at *4 (D. Ariz. Sept. 5, 2024), *report and recommendation adopted*, No. cv-23-00842-PHX-JAT, 2024 WL 4834413 (D. Ariz. Nov. 20, 2024) ("Courts have recognized that the possibility of prolonged appeals weighs in favor of finding that continued detention without a bond hearing violates due process.").  Here, while there is no evidence in the record to determine the likelihood of such appeal or how long such process would take, petitioner is entitled to some deference based on the prospect of an appeal increasing the length of the removal proceedings.  Accordingly, I find that the second factor weighs in favor of petitioner, although only slightly given the lack of evidence or argument presented by petitioner as to the likelihood of an appeal lengthening removal proceedings.

---

[5] It also bears mention that, in the event that petitioner is ordered removed and detained indefinitely under 8 U.S.C. § 1231(a)(6), he can challenge such detention at that time.

**III.    Delays in Proceedings Caused by Petitioner and the Government**

Lastly, as for the third factor, while there is no indication that the government has delayed the removal proceedings, the record shows that petitioner has.  Petitioner has appeared in immigration court on at least four occasions: September 15, 2025, December 3, 2025, December 15, 2025, and December 29, 2025.  ECF No. 1 at 8-9.  Each appearance has seemingly been continued because petitioner claims—despite evidence to the contrary—that he has not been served with a notice to terminate his asylum.  *Id*.  Most recently, on December 29, 2025, the immigration judge instructed a staff member from Golden State Annex to hand petitioner a copy of the notice in court.  *Id*. at 9.  Instead of taking it, petitioner refused because, in his view, the staff member "had no authority to serve such legal documents."  *Id*.

While petitioner "is entitled to raise legitimate defenses to removal and such challenges to his removal cannot undermine his claim that detention has become unreasonable," his insistence that service was improper is not a legitimate defense or basis to challenge removal proceedings.  *See Arido-Sorro*, 2024 WL 4393264, at *5 (internal quotation marks and citation omitted).  The regulation governing the termination of asylum provides that a noncitizen "shall be given notice of intent to terminate," but it does not prescribe a precise way such notice is to be effectuated.  8 C.F.R. § 208.24(c).  Petitioner does not provide any statutory authority or case law indicating that the notice was improper and that, consequently, the removal proceedings are illegitimate.

To be sure, there are legitimate reasons for a petitioner to delay removal proceedings, such as to secure counsel.  *Sanchez-Rivera v. Matuszewski*, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *6 (S.D. Cal. Jan. 9, 2023).  However, petitioner has not presented a legitimate reason and instead has delayed his immigration proceedings based on the unfounded opinion that he was not provided notice.  Accordingly, I find that this factor weighs strongly in favor of respondents.

On balance, that delays in removal proceedings have been caused by petitioner weighs strongly in respondents' favor, outweighing other factors.  Accordingly, a weighing of the *Lopez* factors supports a finding that petitioner's detention does not violate his Fifth Amendment Due

Process rights.[6]

## Conclusion

Based on the foregoing, I recommend that petitioner's writ of habeas corpus be denied.

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be DENIED.

2. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    February 20, 2026

_____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

---

[6] Petitioner also argues that respondents violated his due process rights by failing to inform him of his right to a *Joseph* hearing, wherein he would be allowed to show that he is not subject to mandatory detention. ECF No. 14 at 4. To the extent that this argument operates independent of the *Lopez* test, I do not find that a failure to inform petitioner violated his right to due process because petitioner does not provide any authority showing that respondents had a duty to inform him in the first place.

9